HOLTERS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15665, 15666.   Promulgated May 1, 1929.

*Donald Horne, Esq.*, for the petitioner.
*Paul L. Peyton, Esq.*, for the respondent.

### OPINION.

Lansdon: The only allegation of error relating to the deficiency asserted for the fiscal year ended May 31, 1920, is as follows:

That the Commissioner has assessed a higher excess-profits tax under the provisions of section 328 of the Revenue Act of 1918 than the correct tax assessable under the provisions of section 301 of said Act.

The record fails to support this contention. Computing the petitioner's tax liability for the fiscal year ended May 31, 1920, under the provisions of section 301 (b), the Commissioner determined a tax in the amount of $156,683.60 and asserted a deficiency in the amount of $10,961.63. Subsequently, the Commissioner denied the petitioner's contention that certain items which he had excluded from invested capital should be restored thereto, and granted a request for the computation of its tax liability under the provisions of section 328, found thereby that the tax for the year in question was $149,671.19, and asserted a deficiency in the amount of $3,949.22, which is the deficiency we are asked to redetermine. As decided hereinafter, the evidence adduced by the petitioner fails to show that the Commissioner's adjustments of invested capital were erroneous. It follows, therefore, that the tax liability determined under section 301 (a) of the Revenue Act of 1918 is "the correct tax assessable" thereunder. The determination of the petitioner's tax liability under section 328 resulted in relief to the extent of $7,012.41. The petitioner's allegation that the tax liability has been increased by the application of the relief section is not proved, and the deficiency so determined is approved.

The petitioner contends that on the facts set forth above it is entitled to include the amount of $100,000, representing good will acquired from its predecessors, in the computation of its invested capital for each of the taxable years. The record discloses that shortly after incorporation stock of such par value was issued for good will and that a few days later it was donated back to the petitioner and taken into the accounts thereof as treasury stock. Common and preferred stock was issued for all tangible assets at the agreed inventory values thereof. The books of the petitioner show no entries representing paid-in surplus. The petitioner concedes that in the years immediately preceding the merger neither Miller

nor Holters earned operating profits in excess of a fair return on the value of the tangible capital employed. It argues, however, that each of its predecessors paid in trade-marks, trade-names, business prestige, established clientele and valuable contracts for the sale of output and the purchase of raw materials that should receive favorable consideration as components of good will value. It includes in this list of valuable intangibles the profitable trade relation of Miller with the Potter Shoe Co. The contracts for the purchase of raw materials which the petitioner acquired from·Holters are not in evidence and we know nothing of the alleged advantageous terms thereof or of the volume or value of the transactions thereunder. Without more we can not hold that the trade arrangement between Miller and the Potter Shoe Co. and the Holters raw materials contracts had any value which can be translated into dollars and cents as an element of good will. *F. U. Stearns & Co.*, 14 B. T. A. 689; *Amalgamated Products Co.*, 12 B. T. A. 659. The petitioner also relies on the fact that since it was formed it has earned profits much in excess of a fair return on its investment in physical assets as evidence that it received more than bare manufacturing facilities and equipment from its predecessors. We have several times held that large profits earned subsequent to incorporation is not convincing evidence that good will was acquired from predecessor concerns. *Dwight & Lloyd Sintering Co.*, 1 B. T. A. 179. The evidence fails to overcome the presumption that the Commissioner properly excluded the alleged value of good will from his computation of the petitioner's invested capital in the taxable years. *W. E. Marshall & Co.*, 1 B. T. A. 175; *Richmond Dairy Lunch*, 1 B. T. A. 876; *John H. Wood Co.*, 1 B. T. A. 1098; *General Lead Batteries Co.*, 2* B. T. A. 392; *Cuyahoga Mortgage Co.*, 14 B. T. A. 1.

The petitioner also contends that paragraph 5 of the merger proposition, whereby Miller undertook to secure for the petitioner a 10-year lease on the business premises then in use by it on certain stated terms and conditions, should be regarded as a tangible property paid in for stock which should be included in paid-in surplus as an element of invested capital and that the alleged value thereof, in the amount of $80,000, is a capital investment in a wasting asset which it is entitled to recover free from Federal income tax by ratable annual deductions from its gross income during the term of the lease afterwards secured in conformity with such agreement. The evidence in support of this contention consists largely of an attempt to prove that when acquired by the petitioner the lease had a bonus value of the amount claimed. The president of Holters, who later held the same position with the petitioner, testified that at the time of the transaction in question desirable floor space for manufactur-

ing purposes commanded an annual rental price of 20 cents per square foot. If the premises were worth that much to the petitioner, the terms of its lease indicate a bonus value in the amount claimed. Against this testimony, however, is the proved fact that only two days before the agreement in question was accepted by the directors of the petitioner the identical property had been leased for a term of 99 years, renewable forever, at a rental only a little more than half as much as that specified in the lease, with a further provision that the lessee might purchase the fee at any time within five years for $50,000. There is no evidence that the leasing of the property by Geier to Orr was not a transaction at arm's length. Obviously the terms of this lease measured the rental value of the premises only a day or two before Miller entered into its obligation and the execution of the petitioner's sublease from Orr. We conclude, therefore, even if the Miller undertaking included in the merger proposition was a contract to be measured by the bonus value of the lease afterwards acquired, that not only was there no bonus value in the amount alleged, but apparently the lease was a liability to the petitioner during the term thereof. It is also worthy of notice that neither the alleged contract nor the leasehold acquired in conformity therewith was ever included in the asset accounts of the petitioner at any value and it is not even contended that any stock was issued therefor. In these circumstances we are unable to find that either the alleged contract or the lease acquired in conformity therewith had any value that can be included in the petitioner's paid-in surplus at date of incorporation for invested capital or exhaustion purposes.

The petitioner contends further that its contract with certain underwriters, for the sale of its preferred stock of the par value of $500,000, evidences an executed sale of stock and that such contract is in effect a promissory note for $465,000, which it is entitled to take into its invested capital. In support of this claim it relies on our decision in *Hewitt Rubber Co.*, 1 B. T. A. 424, and a long series of decisions in proceedings involving similar facts based thereon. We are not impressed with petitioner's argument on this issue. In our opinion the underwriters' agreement is no more than a subscription for stock to be executed in conformity with the terms and conditions therein set forth. In *Central Consumers Wine & Liquor Co.*, 1 B. T. A. 1190; *Barker-Jennings Hardware Corporation*, 4 B. T. A. 20; and *Diamond Red Paint Co.*, 3 B. T. A. 688, we held that stock subscriptions may not be included in invested capital until the actual time when payment is made on account thereof. The Commissioner has observed this rule in the instant proceeding and has prorated all actual payments received from the underwriters into the petitioner's invested capital.

Even if it be conceded that the petitioner's contention that the underwriters' contract is in effect a promissory note paid in for stock, it by no means follows that the amount thereof should be included in invested capital as herein claimed. In every decision involving this claim, beginning with *Hewitt Rubber Co.*, *supra*, and ending with *Hewitt Grain & Provision Co. of Escanaba*, 14 B. T. A. 281, we have held that the value of the notes at the date paid in, the solvency of the makers, the good faith of the transaction, and the collectibility of the notes under the laws of the local jurisdiction must be established. No evidence was introduced as to any of these things, all of which are vital to the petitioner's contention on this issue. The determination of the respondent is approved.

The remaining issue challenges the respondent's action in deducting the amount of income and profits taxes due and unpaid from invested capital and in prorating out of its invested capital income and profits taxes of the preceding years which were paid in the taxable years. Each of these questions has been decided adversely to the petitioner. *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168; *W. T. & M. Co.*, 11 B. T. A. 722.

*Decision will be entered for the respondent.*